150781.9

## IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF ILLINOIS
## EASTERN DIVISION

RAUXA DIRECT, LLC a California
Limited Liability Company, and  and as
Representatives of Class Members,

                Plaintiff,

     v.

GARY J. STERN, LEON A.
GREENBLATT, III,  CHUHAK &
TECSON, P.C., a Professional Corporation,
DAVID SHINER, JEANNE KERKSTRA,
DONALD J. RUSS, EDWARD
JOSEPHSON, SCATTERED
CORPORATION, a South Dakota
Corporation, BANCO PANAMERICANO
INC., a South Dakota Corporation,
GIDDYUP, Inc., a Corporation, ROLJFLP,
Inc., a Delaware Corporation,
RUMPELSTILTSKIN USA CORP.,
a Nevada Corporation, ARCHIMEDES
FINANCIAL LLC, a Nevada Limited
Liability Company, METHANE BIO, LLC,
a Delaware Limited liability Company,
KEVIN WERNER, ELIZABETH SHARP,
MICHAEL MAY, LEON GREENBLATT,
MICHAEL HORRELL, RICHARD
NICHOLS, ANDREW JAHELKA,
NORMAN JONES, WINTHROP &
WEINSTINE, P.A.,

          Defendants.

                          No.

## <u>NOTICE OF REMOVAL</u>

     Pursuant to 28 U.S.C. §§ 1332 and 1446, as amended in relevant part by the Class Action

Fairness Act of 2005, the Defendants, NORMAN JONES and WINTHROP & WEINSTINE, P.A.

hereby removes to the U.S. District Court for the Northern District of Illinois the above-styled

action, pending as Case No. 15-L-2701 in the Circuit Court of Cook County, Illinois (the "State Court Action"), and as grounds for removal, state as follows:

## BACKGROUND

1.     The above captioned case was filed in the Circuit Court of Cook County, Illinois, on March 16, 2015, as Case No. 15-L-2701 (the "State Court Action") and seeks relief on behalf of a class.

2.     On May 8, 2015, NORMAN JONES ("JONES") and WINTHROP & WEINSTINE, P.A., ("WINTHROP & WEINSTINE") were served with the State Court Action.  No other pleadings, process or orders have been served on JONES or WINTHROP & WEINSTINE in the State Court Action.  A copy of the Summons is attached hereto as Exhibit A.  A copy of the complaint is attached hereto as Exhibit B.

3.     Plaintiff states in its complaint that RAUXA DIRECT, LLC ("Rauxa") is a limited liability company incorporated under the laws of California.  (Compl. ¶ 12).

4.     Defendant JONES is a resident of the state of Minnesota.

5.     Defendant WINTHROP & WEINSTINE is a law firm located at 225 South Sixth Street, Suite 3500, Minneapolis, Minnesota.

6.     Defendant CHUHAK & TECSON, P.C. is a law firm located in Chicago, Illinois.

7.     On information and belief, Defendants GARY STERN, JEANNE KERKSTRA, DONALD RUSS, DAVID SHINER, EDWARD JOSEPHSON, RICHARD NICHOLS, MICHAEL HORRELL, LEON GREENBLATT, ANDREW JAHELKA, KEVIN WERNER, MICHAEL MAY, ELIZABETH SHARP are residents of the state of Illinois.  (Compl. ¶¶ 14-16, 19).

8.     Defendant SCATTERED CORPORATION is a South Dakota corporation with its principal location of business in Chicago, Illinois.  (Compl. ¶ 20).

9.      Defendant RUMPLESTILTSKIN USA CORP. is a Nevada corporation.  (Compl. ¶ 21).

10.     Defendant BANCO PANAMERICANO INC. is a South Dakota corporation. (Compl. ¶ 22).

11.     Defendant GIDDYUP, INC., is corporation of unknown origin.  (Compl. ¶ 23).

12.     Defendant ROLJFLP, INC. is a Delaware corporation.  (Compl. ¶ 24).

13.     Defendant ARCHIMEDES FINANCIAL, LLC, is a Nevada limited liability company.  (Compl. ¶ 25).

14.     Defendant METHANE BIO, LLC is a Delaware limited liability company.  (Compl.).

15.     Plaintiff's complaint alleges that from 2005 to 2007, Defendants participated in a scheme to sell tax credits generated from the production of fuel from nonconventional sources pursuant to I.R.C. § 45K.  The complaint further alleges that approximately $11,200,000 of those tax credits sold to plaintiffs and other participants were known to be invalid.  Moreover, plaintiffs allege that Defendants organized a tax structure in order to "funnel" the invalid tax credits to plaintiff and other participants under a plan known as the "Green Gas Arrangement," which involved the formation of entities and the preparation of tax returns for those entities, designed to "obfuscate" the IRS and prevent it from determining the origin and validity of the "bogus" tax credits.  (Compl. ¶¶ 27-119).

16.     Plaintiff's complaint cites to the criminal indictment of Defendant GARY STERN as support of these allegations, wherein Defendant GARY STERN was alleged to have induced the sale of approximately $11,000,000 in FNS tax credits from nearly 130 participants.  *See United States v. Gary Stern*, Case No. 14-cr-00580 (N.D. Ill. Oct. 14, 2014).  (Compl. ¶¶ 29-30).

17.     Plaintiff alleges that the actions of the Defendants induced plaintiffs and other participants to purchase the invalid FNS tax credits, making plaintiff and other class members liable for back taxes, interest, penalties and professional fees.  (Compl. ¶¶ 84-97).

18.     Based on the above, Plaintiff's complaint alleges claims eight claims against the various defendants, including violations of 18 U.S.C. §§ 1962(c)–(d); breach of fiduciary duty; aiding and abetting breach of fiduciary duty; fraud; aiding and abetting fraud; and civil conspiracy. (Compl. ¶¶ 174-250).

## BASIS FOR REMOVAL

### Class Action Fairness Act ("CAFA")

19.     This Court has original jurisdiction over this action pursuant to the Class Action Fairness Act of 2005 ("CAFA" or "the Act").  CAFA creates federal diversity jurisdiction where "the matter in controversy exceeds the sum or value of $5,000,000, exclusive of interest and costs, and is a class action in which […] any member of a class of plaintiffs is a citizen of a State different from any defendant."  28 U.S.C. § 1332(d)(2)(A).

20.     Commencement After CAFA Enacted.  This action was commenced on March 16, 2015, well after the date that CAFA was enacted, February 18, 2005.

21.     Class Action.  Plaintiff seeks recovery on behalf of Rauxa individually and as the representative of class members.  (See, Compl. ¶¶ 104-119, Prayer for Relief).

22.     Putative Class Numerosity.  The CAFA requirement that there be at least 100 putative class members is satisfied in this case.  See 28 U.S.C. § 1332(d)(5)(B).  Plaintiff's allegations regarding the "Green Gas Arrangement" are taken from the federal indictment of Defendant GARY STERN, which alleges that GARY STERN, through the "Green Gas Arrangement," provided "at least $11 million in false FNS credits to over 130 participants" and the funneling of credits to

"hundreds of other participants. *See United States v. Gary Stern*, Case No. 14-cr-00580. In addition, Plaintiff alleges "numerous Class Members geographically dispersed throughout the United States such that joinder is impracticable." (Compl. ¶ 105). These allegations, establish a class of over 100 people. For the foregoing reasons, the numerosity requirement of CAFA is met.

23. <u>Diversity of Citizenship</u>. For purposes of establishing federal jurisdiction, CAFA requires only minimal diversity. 28 U.S.C. § 1332(d)(2)(A). The Plaintiff alleges that it is a citizen of California, which is a different state than the citizenship of Defendants JONES and WINTHROP & WEINSTINE, citizens of Minnesota. In addition, the class is nationwide, such that other members of the class would also be from different states than Defendants. Because Plaintiff is a citizen of a state other than Minnesota, the CAFA requirement of minimal diversity is satisfied.

24. <u>Amount in Controversy</u>. Pursuant to CAFA, the claims of the individual members in a class action are aggregated to determine if the amount in controversy exceeds the sum of $5,000,000. 28 U.S.C. § 1332(d)(6). Plaintiffs allege the inducement of approximately $11,000,000 in "bogus" tax credits to plaintiff and other participants, which resulted liability for back taxes, interest, penalties and professional fees. (Compl. ¶¶ 12, 84-97). Moreover, in addition to seeking compensatory damages, plaintiff is seeking punitive or exemplary damages, additional costs under federal and state law, reasonable attorney's fees, and disgorgement of fees paid to defendants. (Compl. Prayer for Relief). Consequently, the jurisdictional amount in controversy is satisfied.

## **PROCEDURAL MATTERS**

25. <u>Removal is Timely</u>. This Notice of Removal is timely under Section 1446(b) of Title 28 of the United States Code because the complaint in the State Court Action was served on Defendants JONES and WINTHROP & WEINSTINE on May 8, 2015. This Notice of Removal is

filed within thirty (30) days of Defendant's receipt of the Class Action Complaint. Therefore, the Notice of Removal is timely filed under 28 U.S.C. § 1446(b).

26.  <u>Removal to Proper Court</u>.  The United States District Court for the Northern District of Illinois, Eastern Division is the federal judicial district embracing the Circuit Court of Cook County, Illinois, where the State Court Action was filed.  28 U.S.C. § 93(a)(1).

27.  <u>Pleadings and Process</u>.  Defendant has attached a copy of all process, pleadings, and orders that have been served in this action as Exhibits A and B.

28.  Defendant will promptly serve Plaintiff and all other parties with this Notice of Removal and will promptly file a copy of this Notice of Removal with the clerk of the state court in which the State Court Action is now pending, as required by 28 U.S.C. § 1446(d).

29.  Defendant hereby reserves all defenses and objections to Plaintiff's Complaint.

WHEREFORE, Defendants NORMAN JONES and WINTHROP & WEINSTINE, P.A., hereby give notice that the above-referenced action now pending in the Circuit Court of Cook County, Illinois has been removed to this Court.

Dated: June 5, 2015

Respectfully submitted,

By:  s/ John J. Duffy
One of the Attorneys for Defendants
NORMAN JONES and WINTHROP & WEINSTINE, P.A.

John J. Duffy (6224834)
David K. Duffey (6308917)
DONOHUE BROWN MATHEWSON & SMYTH LLC
140 South Dearborn Street, Suite 800
Chicago, IL  60603
Telephone:  (312) 422-0900 / Facsimile:  (312) 422-0909
Email:  john.duffy@dbmslaw.com
Email FOR SERVICE:  Service@dbmslaw.com

# EXHIBIT A

2120 - Served   2121 - Served
2220 - Not Served  2221 - Not Served
2320 - Served By Mail 2321 - Served By Mail
2420 - Served By Publication 2421 - Served By Publication
SUMMONS   ALIAS - SUMMONS



(2/28/11) CCG N001

## IN THE CIRCUIT COURT OF COOK COUNTY, ILLINOIS
### COUNTY DEPARTMENT, LAW _____ DIVISION

No. 15 L 2701

Please Serve: Norman Jones, c/o Winthrop & Weinstine, 225. S. Sixth St., Suite 3500

Minneapolis, MN 55402

Rauxa Direct, LLC, a California Limited Liability Co., and as Rep. of Class Members,
          (Name all parties)

v.

Gary J. Stern, Leon A. Greenblatt, III, Chuhak & Tecson, P.C., et al.

### ⊙ SUMMONS   ○ ALIAS SUMMONS

Norman Jones

To each Defendant:

 YOU ARE SUMMONED and required to file an answer to the complaint in this case, a copy of which is hereto attached, or otherwise file your appearance, and pay the required fee, in the Office of the Clerk of this Court at the following location:

- ⊙   Richard J. Daley Center, 50 W. Washington, Room 801 _____, Chicago, Illinois 60602

- ○   District 2 - Skokie   ○ District 3 - Rolling Meadows   ○ District 4 - Maywood
  5600 Old Orchard Rd.  2121 Euclid     1500 Maybrook Ave.
  Skokie, IL 60077   Rolling Meadows, IL 60008  Maywood, IL 60153

- ○   District 5 - Bridgeview  ○ District 6 - Markham    ○ Child Support
  10220 S. 76th Ave.  16501 S. Kedzie Pkwy.  28 North Clark St., Room 200
  Bridgeview, IL 60455  Markham, IL 60428   Chicago, Illinois 60602

You must file within 30 days after service of this Summons, not counting the day of service.
**IF YOU FAIL TO DO SO, A JUDGMENT BY DEFAULT MAY BE ENTERED AGAINST YOU FOR THE RELIEF REQUESTED IN THE COMPLAINT.**

To the officer:

 This Summons must be returned by the officer or other person to whom it was given for service, with endorsement of service and fees, if any, immediately after service. If service cannot be made, this Summons shall be returned so endorsed. This Summons may not be served later than 30 days after its date.

MAY 1 2015

Atty. No.: 37199

Name: Amir R. Tahmassebi, Konicek & Dillon, P.C.

Atty. for: Plaintiffs

Address: 21 West State Street

City/State/Zip: Geneva, IL 60134

Telephone: (630) 262-9655

WITNESS, _____, _____

_____
Clerk of Court

Date of service: _____
(To be inserted by officer on copy left with defendant or other person)

Service by Facsimile Transmission will be accepted at: _____





DOROTHY BROWN, CLERK OF THE CIRCUIT COURT OF COOK COUNTY, ILLINOIS

EXHIBIT
A

# EXHIBIT B

IN THE CIRCUIT COURT OF COOK COUNTY, ILLINOIS
COUNTY DEPARTMENT, LAW DIVISION

RAUXA DIRECT, LLC, a California Limited )
Liability Company, )
and as Representatives of Class Members )
                                           )
                  Plaintiffs, )

v. )         Case No.

GARY J. STERN, LEON A. GREENBLATT, III, )
CHUHAK & TECSON, P.C., )
a Professional Corporation, )     JURY DEMANDED
DAVID SHINER, JEANNE KERKSTRA, )    (over $50,000)
DONALD J. RUSS, )           AJC
EDWIN JOSEPHSON, )
SCATTERED CORPORATION, a )
South Dakota Corporation, )
BANCO PANAMERICANO INC., a South Dakota )
Corporation, GIDDYUP, Inc., a )
Corporation, ROLJFLP, Inc., a Delaware )
Corporation, )
RUMPELSTILTSKIN USA Corp., a Nevada )
Corporation, )
ARCHIMEDES FINANCIAL LLC a Nevada )
Limited Liability Company,   METHANE BIO, )
LLC, a Delaware limited liability company )
KEVIN WERNER, )
ELIZABETH SHARP, MICHAEL MAY )
LEON GREENBLATT, MICHAEL HORRELL, )
RICHARD NICHOLS, ANDREW JAHELKA, )
NORMAN JONES, )
WINTHROP & WEINSTINE, P.A., )
                                           )
                Defendants. )

## CLASS ACTION COMPLAINT

Plaintiff Rauxa Direct, LLC, a California Limited Liability Company on behalf of itself

and all others similarly situated, for its Class Action Complaint against Chuhak & Tecson, P.C.,

a professional corporation, David Shiner, Jeanne Kerkstra, Gary J. Stern, Leon A. Greenblatt, III,


EXHIBIT
B

Michael Horrell, Richard Nichols, Andrew Jahelka, Donald J. Russ, Edwin Josephson, Scattered Corporation, a South Dakota Corporation, Resource Technology Corporation, a Delaware corporation, Delaware Gas & Electric, a Delaware corporation, Kevin Werner, Elizabeth Sharp, Michael May, Norman Jones, Winthrop & Weinstine, P.A., ROLJFLP, Inc., a Delaware Corporation, Banco PanAmericano, Inc., a South Dakota corporation, Giddyup, Inc., a corporation whose state of incorporation is currently unknown, Archimedes Financial, LLC, a Nevada limited liability company, Rumpelstiltskin USA Corp., a Nevada corporation, and Methane Bio, LLC, a Delaware limited liability company (collectively referred to as the "Defendants") allege as follows:

## INTRODUCTION

The scheme at the center of this RICO Complaint involved sale of bogus tax credits alleged to have been generated from non-conventional fuel sources in compliance with Section 29/45K of the Internal Revenue Code (known as FNS tax credits). Defendants and others approached wealthy individuals and entities with a simple proposition: the sale of a certain amount of credits for a certain amount of money. The Defendants would represent that by claiming the credits purchased from them, Plaintiff and others could substantially decrease their tax liability.

Organized by a group of attorneys at the Chicago law firm of Chuhak & Tecson P.C. and assisted by other Defendants spread across the country, all Defendants perpetrated the multi-year scheme of selling the bogus FNS credits to unsuspecting individuals and entities, including Plaintiff, for tens of millions of dollars by funneling the credits through a web of partnerships and limited liability companies exclusively controlled by Defendants with the intention of

masking the tax credits' illegitimacy. All of the entities listed in this Complaint were created for the sole purpose of effectuating the scheme and had no legitimate business purpose.

At all relevant times, Defendants knew that the over 90% of the tax credits they were selling were not legitimate. Defendant Gary Stern, with the assistance of other attorneys at Chuhak & Tecson P.C. and other individual defendants, created bogus tax returns and schedule K-1 statements in an attempt to conceal the illegitimacy of the tax credits from both the purchasers of such credits and the Internal Revenue Service. All of the Defendants used both the mail and electronic communications to send and receive correspondence, including false tax documents, all in furtherance of the scheme to sell bogus tax credits. Defendants mailed or otherwise caused to be delivered the false tax documents to various IRS processing centers across the country in a further attempt to conceal the true nature of the scheme. Moreover, the attorneys at Chuhak & Tecson P.C. charged Plaintiff and other parties similarly situated outrageous fees to prepare the fraudulent tax documents.

After the Internal Revenue Service began to investigate the tax returns of individuals and entities to whom Defendants sold credits, Defendants submitted false statements and documents to the IRS in the hope that they could somehow convince the tax authorities that the credits were legitimate. Defendants also sent letters of reassurance to Plaintiff and others telling them not to worry and that the credits were 100% legitimate and would be upheld. Even today, despite the overwhelming evidence that the credits were improper because most of the landfills lacked the proper equipment to convert gas to electricity, resulting in over 90% of the credits being disallowed by the IRS, and documentation showing the Defendants always knew of the credits illegitimacy, Defendants continue to claim that the credits are legitimate. Defendants'

claims are further undercut by their failure to respond to the IRS audit request for the production of documentation that could have established the legitimacy of the credits. Defendants had a fiduciary duty to defend the transaction in Tax Court and the Revenue Agent Report for the tax credits for 2006 and 2007 shows that the Defendants failed to offer any proof, documentation, or other evidence that could have substantiated the validity of some or all of the tax credits.

<u>SECTION 1</u>
<u>FACTUAL SUMMARY</u>

1.     This case stems from a conspiracy among the Defendants and others to induce individuals, partnerships, and corporations such as Plaintiff into acquiring fraudulent tax credits that were represented by Defendants to be in compliance with Internal Revenue Code Section 29/Section 45K. The scheme to defraud the Plaintiff and other class members was conducted through a pattern of racketeering activity (mail and wire fraud) and was accomplished through the efforts of an association-in-fact-enterprise.

2.     Internal Revenue Code Section 29, renumbered as I.R.C. Section 45K beginning January 1, 2006, permitted producers of certain fuels from nonconventional sources, including biomass (such as methane gas produced from garbage landfills), to claim tax credits known as FNS tax credits for the production of such fuels, if such fuels were sold to an unrelated third party.

3.     Under IRC Section 29, any FNS tax credits generated in years prior to 2006 which were unable to be claimed in the year they were generated could be carried forward and be used in future years only against the alternative minimum tax.

4

4.     Under IRC Section 45K, any FNS tax credits generated in 2006 or later years which were unable to be claimed in the year generated could be carried forward and used in future years as general business credits, meaning there were not limited to reducing just the alternative minimum tax.

5.     Defendants Michael Horrell ("Horrell"), Richard Nichols ("Nichols"), Leon A. Greenblatt, III ("Greenblatt"), Andrew Jahelka ("Jahelka"); Kevin Werner ("Werner"), Elizabeth Sharp ("Sharp"), and Michael May ("May") (collectively the "Landfill Operators"), through the entities that comprised the "Green Gas Arrangement," marketed the sale of tax credits as a way to reduce income tax liability to the public through various means including through their attorneys at Chuhak & Tecson P.C.

6.     Chuhak & Tecson, through its agents, Defendants Gary Stern ("Stern"), Jeanne Kerkstra ("Kerkstra"); David Shiner ("Shiner"), Donald J. Russ ("Russ"), and Edwin Josephson ("Josephson") held themselves out to have knowledge and expertise in the field of tax law and assisted the Landfill Operators in the sale and promotion of the tax credits to the public. They also engaged in the marketing and sale of bogus FNS credits through their own professional networks, including accountants and lawyers throughout the country. Defendants Chuhak & Tecson along with Russ, Josephson, Stern, Kerkstra, and Shiner will be collectively referred to as the "Chuhak Defendants."

7.     The Chuhak Defendants, working cooperatively with Defendant Norman Jones ("Jones") of Winthrop & Weinstine, P.A., proceeded to work with the Landfill Operators to develop and market the alleged tax credits. Defendant Jones was at all relevant times acting as a

duly authorized agent of Winthrop & Weinstine, P.A. and holds himself out as having knowledge and expertise in energy tax credits.

8.      The Chuhak Defendants, the Landfill Operators, along with assistance with Defendant Jones, devised a scheme to sell abusive and illegal tax credits under the auspices of Section 29 and Section 45K through the entities identified as part of the "Green Gas Arrangement".

9.      All of the Defendants and other co-conspirators knew or should have known that these arrangements likely would be heavily scrutinized by the Internal Revenue Service ("IRS"), be deemed abusive and not in compliance with the applicable section, and/or expose those participating in such arrangements to costly IRS audits, including substantial tax liabilities, penalties, and interest.

SECTION II
JURISDICTION AND VENUE

10.      This Court has jurisdiction pursuant to 735 ILCS 5/209(a)(1), (a)(2); (a)(7); and (a)(11) of the Illinois Code of Civil Procedure.

11.      Venue is proper under 735 ILCS 5/2-101(1) & 5/2-101(2) and 735 ILCS 5/2-102(a) & 5/2-102(b) because several of Defendants are residents of Cook County, and part of the transaction out of which this cause of action arose occurred in Cook County. Moreover, several of the Defendants have their principle place of business in Cook County.

SECTION III
THE PARTIES

12.      Plaintiff Rauxa Direct, LLC, is a limited liability company incorporated under the laws of California.

13.     Defendant Chuhak & Tecson, P.C. is law firm located at 30 South Wacker, Suite 2600 in Chicago, Illinois that engages in the practice of law in Cook County.

14.     Defendants Gary Stern, Jeanne Kerkstra, and David Shiner are admitted to the Bar in the State of Illinois, and at the times and places relevant herein, were principals of Chuhak & Tecson, P.C., acting as duly authorized agents and representatives of Chuhak & Tecson, P.C., and acting within the scope of their employment. During the course of this scheme, Josephson, Russ, Kerkstra, and Shiner worked at the direction of Stern.

15.     Defendants Michael Horrell, Richard Nichols, Leon Greenblatt, and Andrew Jahelka, Kevin Werner, and Michael May are residents of Cook County, IL and Lake County, IL.

16.     Defendant Elizabeth Sharp is an attorney admitted to the Bar in the State of Illinois, and during the relevant time period was General Counsel of Defendant Scattered Corporation. She provided material assistance in setting up and operating the Green Gas Arrangement.

17.     Defendant Winthrop & Weinstine, P.A. is a law firm located at 225 South Sixth Street, Suite 3500 in Minneapolis, MN.

18.     Defendant Norman Jones is admitted to the Bar in the State of Minnesota, and at the times and places relevant herein, was a shareholder of Winthrop & Weinstine, P.A., acting as duly authorized agent and representative of Winthrop & Weinstine, P.A. and at all relevant times acting within the scope of his employment. Whenever Defendant Jones is included, Defendant Winthrop & Weinstine, P.A. is included without reference.

19.     Defendants Gary J. Stern, David Shiner, Jeanne Kerkstra, Donald J. Russ and Edwin Josephson were at all relevant times members of employees of Chuhak & Tecson, P.C.

20.     Scattered Corporation is a South Dakota corporation with its principal office at 330 S Wells St, Suite 711, Chicago, IL 60606. Scattered Corporation is owned and controlled by Andrew Jahelka, Leon Greenblatt, and Richard Nichols.

21.     Rumplestiltskin USA Corp. is owned by Greenblatt, Nichols and Jahelka and is a holding company for many of the entities used by the Landfill Operators to perpetrate fraudulent schemes.

22.     Banco PanAmericano Inc., a South Dakota corporation, is a company owned and controlled by Defendant Greenblatt and used in the RICO enterprise.

23.     Giddyup, Inc., a corporation whose state of incorporation is currently unknown, is a company owned and controlled by Defendant Jahelka, and used in the RICO enterprise.

24.     ROLJFLP, Inc., a Delaware corporation, is a company owned and controlled by Defendant Nichols and used in the RICO enterprise.

25.     Archimedes Financial, LLC, a Nevada limited liability company, owned and controlled by Defendant Horrell and used in the RICO enterprise.

26.     Methane Bio, LLC, Resource Technology Corporation and Delaware Gas and Electric, Inc. were used by the Landfill Operators and the Chuhak Defendants to carry out the fraudulent scheme that is the subject of this complaint and such entities were used in the RICO enterprise.

## SECTION IV
## FACTUAL ALLEGATIONS

I.      IRS Scrutinizes Abusive Section 45K Claims

27.     Producers of fuel from nonconventional sources ("FNS") may, in certain circumstances, by entitled to claim a federal income tax credit for the production and sale of the fuel. See I.R.C. § 45K (formerly I.R.C. § 29). The Internal Revenue Code strictly limits the manner, timing and availability of these credits ("FNS Credits").

28.     FNS credits have been heavily abused in the recent past. During this time unscrupulous attorneys, accountants, and tax return preparers have sold schemes falsely purporting to entitle the customers to millions of dollars of FNS credits. See, e.g., *United States v. George Calvert et al.*, Case No 09-cv-00618 (M.D. Fla. Apr. 2, 2009); *United States v. Ronald Fontenot et al.*, Case No. 09-cv-00893 (E.D. Tex. Apr. 2, 2010); *United States v. Sally Hand-Bostick et al.*, Case No. 09-cv-01075 (N.D. Tex. Aug. 2, 2010). To date, at least 18 individuals have been permanently enjoined from marketing or selling FNS credits, and at least 3 individuals have been convicted of crimes in connection with these credits. *See United States v. Anderson*, Case No. 09-cr-00177 (M.D. Fla. Apr. 15, 2009) (Robert Anderson convicted of conspiracy to defraud the United States and to commit mail fraud); *United States v. Calvert*, Case No. 10-cr-00325 (M.D. Fla. Aug. 4, 2010) (George Calvert convicted of conspiracy to commit wire fraud and money laundering); *United States v. Guido*, Case No. 10-cr-00325 (M.D. Fla. Aug. 4, 2010) (Gregory Guido convicted of conspiracy to commit wire fraud and money laundering).

29.     In November 2013, the United States government filed a Complaint for Permanent Injunction and Other Relief against Defendant Gary Stern for actions also at issue in this Complaint. *See United States v. Gary J. Stern*, Case No. 13-cv-07844 (N.D. Ill. Nov. 1, 2013). To resolve that Complaint, Defendant Stern, entered into a plea deal with the government, where, among other things, he agreed to be permanently enjoined from preparing, filing, or assisting

9

others in preparing or filing federal taxes other than for himself or his family. (Ex. 1, *United States v. Gary Stern*, Case No. 14-cr-00580 (N.D. Ill. Oct. 14, 2014)). On February 27, 2014, Defendant Stern, per the terms of his settlement with the Justice Department, sent Plaintiff a copy of the Injunction to which he agreed.

30.     Recently, the United States government filed an eight count criminal indictment against Defendant Gary Stern in this District concerning another related scheme to sell bogus FNS tax credits. *See United States v. Gary Stern*, Case No. 14-cr-00580 (N.D. Ill. Oct. 14, 2014).

II.     The Green Gas Arrangement

31.     Until August 7, 2005, Section 29 of the Internal Revenue Code allowed a credit for the production and sale of fuel from non-conventional sources, including from non-conventional sources, including from landfill biomass (*i.e.* rotting trash). On August 8, 2005, Section 29 was reassigned as Section 45K and became effective for tax years after 2005. The purpose of Section 29 was to subsidize the activity of converting landfill gas into electricity.

32.     To qualify for FNS credits, a taxpayer must meet various requirements, including producing fuel and selling it to an unrelated person during the taxable year for which the credit is claimed. I.R.C. § 45K(a)(2) (formerly I.R.C. § 29(a)(2)).

33.     An owner of a qualified property or energy producing facility who is not able to take full advantage of the tax credit may, in some circumstances, sell an economic interest in the property or facility to someone who is able to take advantage of the tax credit.

34.     The amount of the FNS credits allowed in a given year is based on the amount of fuel the taxpayer produces and sells that year. The taxpayer is entitled to FNS credits in

proportion to his or her ownership interest in the gross sales from the property or facility. I.R.C. § 45K(d)(3) (formerly I.R.C. § 29(d)(3)).

35.    The taxpayer must acquire economic benefits and burdens related to the property or facility, including the potential to receive additional economic benefit from the sale of fuel after the credit expires.

36.    Resource Technology Corporation ("RTC") was a company located in Chicago purportedly specializing in landfill maintenance and natural gas extraction. RTC, which has been bankrupt since 1999, had agreed to construct and operate landfill gas extraction facilities at various landfills throughout the United States. See *In re Resources Tech. Corp.*, Case No. 99-35434 (Bankr. N.D. Ill. Nov. 15, 1999).

37.    The owners and board members of RTC have included the Landfill Operators: Greenblatt, Nichols, Jahelka, Connelly and Werner.

38.    Several individuals from RTC, including Greenblatt, Nichols, Jahelka and John Connelly ("Connelly"), hired Defendant Stern to create a tax structure for funneling FNS credits to people who wanted tax benefits. The Chuhak Defendants assisted and facilitated the Landfill Operators to implement and operate what became known as the Green Gas Arrangement, essentially a scheme to sell bogus FNS credits.

39.    During this time period, Defendant Kerkstra boasted that the Chuhak Defendants had more experience with FNS credits than any other firm.

40.    Defendants Kerkstra and Stern continually consulted and collaborated with Defendant Jones while they worked to implement the scheme to sell the bogus FNS credits.

11

41.     Defendant Chuhak, with the assistance of Defendant Jones and the Landfill Operators, drafted the documents necessary to create the following tax shelter entities: Green Gas Delaware Statutory Trust; Pontiac Statutory Trust; Methane Bio LLC; Allen Gas GP; Bradshaw Gas GP; Jaguar Gas GP; Buon Giorno Gas GP; Craig GP; Australia Gas GP; Casper Gas GP; Jones Gas GP; Zoeller Gas GP; Irwin Gas GP; JMK Gas GP; 2006 Methane Gas GP; DJRJ Gas GP; 2005 Medinah Gas GP; Winged Foot Gas GP; Bloomington GP; Methane Green LLC; Baltic Gas GP; Methane Blue LLC; Colt Gas GP; China Gas GP; Rocca Gas GP; DK Gas GP; BV Gas GP; Villapiano Gas GP; Pink Gas LLC; Werdna Gas GP; Red Gas LLC; Delaware Gas & Electric, Inc.; LaMonica Gas G.P.; Orange Gas; Davis Gas GP; Ciao Gas GP; Arrivederci Gas GP; and San Bernardino Gas GP. (Collectively, "the Green Gas Arrangement").

42.     The named Plaintiff in this case purchased FNS credits from Baltic Gas GP, Davis Gas GP, Ciao Gas LP and Arrivederci Gas GP.

43.     The Green Gas Arrangement worked as follows. An individual seeking to reduce his or her federal income tax liabilities sent money to either the Chuhak Defendants or the Landfill Operators in exchange for a percentage of FNS credits. As a result, the Chuhak Defendants allocated a certain dollar amount of FNS credits to that participant for use on that participant's federal income tax return. Generally, FNS credits reduce an individual's tax liability on a dollar-for-dollar basis, meaning that $100 of FNS credits eliminates $100 in tax liability.

44.     The FNS credits that the Chuhak Defendants allocated to participants originated with an entity called Green Gas Delaware Statutory Trust ("Green Gas Trust"). Green Gas Trust

purportedly accumulated these FNS credits as a result of landfill gas sales agreements with RTC.

45.    Green Gas Trust is a Delaware trust that has been controlled by Defendants Connolly and Werner. The Chuhak Defendants created and represented Green Gas Trust, and in addition, Defendant Stern personally prepared that entity's tax returns (or at least signed them).

46.    On the 2005, 2006, and 2007 federal income tax returns for Green Gas Trust, Stern prepared a tax return that claimed FNS credits in the amounts of $5.40 million, $3.65 million, and $1.94 million, respectively.

47.    In order to allocate FNS credits from Green Gas Trust to individual participants, the Chuhak Defendants funneled the credits through a complex layering structure that utilized over 115 partnerships, companies, and other entities. This was likely to obfuscate the IRS and therefore attempt to prevent it from determining the origin and validity of the FNS credits.

48.    The Chuhak Defendants' control over the Green Gas Enterprise is demonstrated in a memo of Defendant Kerkstra to Defendant Stern. In the memo, Kerkstra references a spreadsheet given to her by Defendant Nichols concerning the Green Gas Enterprise. She goes through a detailed analysis of how she (along with Defendant Stern and Shiner) simply re-adjust the tax credits, capital contributions and other fees to give the appearance of legitimacy. (See EXHIBIT 1 – Memo from Kerkstra to Stern dated May 12, 2006).

49.    Exhibit 1 also confirms that the amount of tax credits received by a purchaser like Plaintiff did not actually correlate to the amount of the contribution. The Defendants always

provided an explanation as to why an individual or entity was not receiving the amount of credits originally contracted for.

50.     The Chuhak Defendants prepared the tax returns that served as the conduit for funneling FNS credits from the Green Gas Trust to individual participants.

51.     In order to participate in the Green Gas Arrangement, participants signed various documents prepared by the Chuhak Defendants and Defendant Jones, including purported conflict of interest waivers. Participants paid varying amounts in order to receive FNS credits, depending upon their income tax liability.

52.     These contributed funds were held and disbursed at Defendant Stern's and Landfill Operators' direction.

53.     The Chuhak Defendants used the 115 partnerships, companies, and other entities to funnel over $11 million in FNS credits from Green Gas Trust to hundreds of participants, including Plaintiff, from 2005 through 2007.

54.     Besides Plaintiff, these individuals included professional athletes, wealthy professionals, and Defendant Stern's business associates.

55.     The Chuhak Defendants prepared the federal income tax returns that were used to funnel these tax credits to participants.

56.     Defendant Stern personally signed many of these tax returns.

57.     The FNS credits that the Chuhak Defendants funneled to participants in the Green Gas Arrangement originated on the tax returns of the Green Gas Trust that Defendant Stern had prepared. The credits themselves purportedly were generated in connection with

landfill gas that Defendant Stern and the Landfill Operators claimed had been produced from at least 24 different landfills located throughout the United States.

58.     Green Gas Trust did not directly have any rights to the gas that was purportedly collected from these landfills. Instead, it entered into purported lease agreements with RTC with respect to these gas rights. RTC, in turn, had originally obtained these gas rights as a result of various contracts it entered into with landfill owners. In an attempt to legitimize the credits, Green Gas Trust then entered into purported landfill gas sales agreements with RTC.

59.     The FNS credits that Stern sold to participants in the Green Gas Arrangement were bogus for a number of reasons. Despite knowing the bogus nature of the FNS credits, the Chuhak Defendants, Defendant Jones, and the Landfill Operators represented to every purchaser including Plaintiff that the credits were legitimate.

60.     First, Green Gas Trust and RTC did not have any legal rights to the landfill gases claimed at most of the landfills. In fact, after RTC's rights to extract gas at certain of these landfills were terminated, RTC's employees were prohibited from entering the landfills. (See EXHIBIT 2 – Email from Edmund Burke to Jeanne Kerkstra dated February 21, 2006).

61.     Second, many of the landfills that FNS credits were being claimed from did not have a gas collection system in place, while others did not have an operational gas-to-energy conversion facility.

62.     Third, many of the landfills did not have sufficient landfill gas to sell for energy-conversion (i.e. the gas was not of sufficient quality to be sold; in most instances the gas was, at most, flared).

63.   Between 2005 and 2007, the Chuhak Defendants with the assistance of Defendant Jones used the Green Gas Arrangement to funnel over $12.4 million in FNS credits to their customers. Approximately $11.2 million of these credits were bogus for one or more of the reasons identified above and subsequently disallowed by the IRS.

64.   The IRS did, in fact, allow a small dollar amount of credits in the rare instances in which it ascertained that the landfill had an operational gas-to-energy conversion facility that sold the converted fuel. The Chuhak Defendants used the fact that some converted gas was sold from a few landfills as a fig leaf to conceal the defects present at the vast majority of the landfills, in an attempt to legitimize the entire scheme.

65.   For example, in 2005 the IRS only allowed $450,360 out of the over $5.3 million the Green Gas Delaware Statutory Trust tried to claim on its tax return. The IRS allowed only $98,335 out of the over $4 million in FNS credits that the Chuhak Defendants allocated to participants in 2006 in connection with the Green Gas Arrangement. With respect to the 2007 tax year, the IRS allowed only $36,963 out of the over $2 million in FNS credits that Stern allocated to participants, including Plaintiff. In fact, however, over $11.4 million (or approximately 92%) of the FNS credits the Chuhak Defendants funneled to customers were bogus.

66.   Backdating was prevalent throughout the Green Gas Arrangement. For example, Stern explicitly directed the other Chuhak Defendants to backdate checks that were used to funnel money between the various entities he controlled. The Stern Indictment also notes the prevalence of backdating. (See EXHIBIT 3 – Federal Indictment of Gary Stern October 14, 2014).

67.   Documents were routinely executed with backdating to whatever date was expedient for purposes of facilitating the scheme without regard to the true transaction date.

68.   As a result, the date on any given document is often meaningless.

III.   Chuhak Defendants and Defendant Jones' Role In The Green Gas Arrangement

69.   The Chuhak Defendants and Defendant Jones provided "legal services" for the Green Gas Arrangement, including rendering professional opinions on how to create the Green Gas Arrangement in compliance with Section 29 of the Tax Code. Chuhak was also hired to give advice to potential purchasers in order to induce them to purchase the bogus FNS credits. That "legal advice" consisted of assistance to the Landfill Operators in the design and operation of a byzantine scheme intended to conceal the truth from both the IRS and unwitting participants.

70.   The Chuhak Defendants along with Defendant Jones worked together with the Landfill Operators to design and operate the Green Gas Arrangement.

71.   Defendant Stern holds himself out as an expert on FNS credits and the relevant tax laws, and has authored several legal opinions on the topic.

72.   Stern controlled and operated most of the partnerships and other entities that he used to funnel FNS credits to participants in the Green Gas Arrangement. For example, Stern managed at least 48 partnerships and companies, personally represented at least 17 entities, was an officer of at least 12 entities, and was the sole shareholder of at least 10 entities.

73.   At Stern's direction, the other Chuhak Defendants and Defendant Jones drafted agreements that the individual participants signed in order to participate in the Green Gas Arrangement.

74.     Defendant Stern personally signed these agreements on behalf of each partnership in his capacity as president of the partnership's managing general partner.

75.     Stern, along with the other Chuhak Defendants, purported to represent each of the hundreds of entities that he used to implement the Green Gas Arrangement. At Stern's request, participants, including Plaintiff, executed forms that purported to waive any conflict involved in the transaction.

76.     By limiting the number of other attorneys involved in the transaction, the Chuhak Defendants and Defendant Jones were able to reap additional legal fees and exercise greater control of the Green Gas Arrangement, thus minimizing or eliminating outside scrutiny.

77.     Defendant Stern held and personally disbursed (or directed other Chuhak Defendants to disburse) the funds that participants, including Plaintiff, contributed to the Green Gas Arrangement.

78.     The Chuhak Defendants prepared over 170 federal income tax returns that they used to funnel FNS credits to participants in the Green Gas Arrangement.

79.     The Chuhak Defendants sent correspondence and other documents to Plaintiff and other participants, including Schedules K-1 and explanatory cover letters that identified the amount of false FNS credits that they had allocated to Plaintiff and other participants for use in a particular tax year.

80.     For example, in a letter dated April 2, 2007, Defendant Stern and the Chuhak Defendants sent Plaintiff various tax forms which purported to show that Plaintiff was entitled to over $200,000 in tax credits for the 2006 tax year.

81.     The Defendants solicited and sold a purported $200,000 in FNS tax credits to the Plaintiff. Plaintiff now knows that the $200,000 in purported FNS tax credits were nonexistent and could not be claimed in the manner alleged in the letter.

82.     Defendant Stern was identified as a point of contact on many of the landfill gas sale agreements that purported to legitimize the manner in which the Chuhak Defendants allocated FNS credits to Plaintiff and other participants.

83.     All of the Defendants benefitted from the operation of the Green Gas Arrangement. The Defendants wrongly collected exorbitant fees and profits from Plaintiff and other participants in the Green Gas Arrangement.

IV.     Marketing of the Green Gas Arrangement

84.     The Chuhak Defendants along with Defendant Jones and the Landfill Operators established an elaborate web of partnerships and companies to give the appearance to Plaintiff and other participants that they could legitimately claim FNS credits on their individual income tax return.

85.     In reality, the Defendants were simply selling bogus FNS credits to Plaintiff and other participants for a stated amount.

86.     All Defendants marketed these tax credits as a tax benefit, not as an investment in a landfill or in a gas-to-energy conversion facility.

87.     Based on the purported legitimacy of the FNS credits, individuals, including Plaintiff, participating in the Green Gas Arrangement claimed the false FNS on their federal income tax returns.

88.     The Chuhak Defendants used several subpromoters, including some of the Landfill Operators, to sell the bogus FNS credits to Plaintiff and other participants.

89.     At the Chuhak Defendants' direction, these subpromoters, in offering the credits to a prospective participant including Plaintiff, would simply state "[h]ere is the information for the purchase of the tax credits."

90.     In Plaintiff's case, Landfill Operator Horrell brought on Karen Brenner as an unwitting subpromoter. Based on the fraudulent representations of Horrell and the Chuhak Defendants about the legitimacy of the Green Gas Arrangement, Karen Brenner sought out purchasers. Plaintiff, Rauxa Direct LLC, was one of the entities or individuals that Karen Brenner brought into the Green Gas Arrangement.

91.     Upon information and belief, the Chuhak Defendants solicited and compensated promoters, including the Landfill Operators, to sell FNS credits to participants including Plaintiff.

92.     Defendant Stern and the other Chuhak Defendants often disguised some of the payments to the Landfill Operators as fees for "consulting services."

93.     Ultimately, the IRS began examining the tax returns of customers who participated in the Green Gas Arrangement.

94.     As discussed above, the IRS ultimately disallowed over 90% of the FNS credits claimed by participants.

95.     All of the Defendants acted together to perpetuate a fraud upon the Plaintiff and other class members: the Chuhak Defendants and Defendant Jones, by presenting clearly erroneous and false legal opinions and fraudulent tax forms concerning the full deductibility of

the tax credits; and the Landfill Operators, by using the false legal conclusions of the Chuhak Defendants and Defendant Jones to "sell" Plaintiff and other participants the bogus tax credits.

96. The Chuhak Defendants also used the entities controlled by Defendant Stern and the Landfill Operators to create the appearance that they actually had the right to sell the FNS credits.

97. Based on the representations of all the Defendants, Plaintiff and the other participants decided to purchase the FNS tax credits being sold by all Defendants.

98. The Plaintiff, along with other class members, are liable for back taxes, interest, penalties and professional fees as a result of the tax benefits they claimed from the Green Gas Arrangement.

## SECTION V
## CO-CONSPIRATORS

99. Whenever in this Complaint reference is made to any act, deed, or transaction of any business entity, the allegation means that the business entity engaged in the act, deed or transaction by or through its officers, directors, agents, employees or representatives while they were actively engaged in the management, direction, control, or transaction of the business's affairs.

100. The acts alleged in this Complaint to have been done by Defendants were authorized, ordered and condoned by their parent business entities and authorized, ordered and performed by their officers, directors, agents, employees, or representatives while engaged in the management, direction, control or transaction of their business affairs.

101. All Defendants were engaged in a conspiracy to defraud and each of them is liable for the actions of the other as if they themselves had committed the acts.

102. The Defendants were acting as the agents of the others with either express or implied authority to so act in furtherance of their common goal to operate a RICO enterprise and all Defendants benefited financially therefrom and ratified the acts of the others.

103. Therefore, each of the Defendants is jointly and severally liable for the actions of every other Defendant committed in furtherance of the conspiracy.

SECTION VI<br>CLASS ALLEGATIONS

104. Plaintiff brings this action on its own behalf and, pursuant to Rule 23(b)(1)(A), (b)(2), and/or (b)(3) of the Federal Rules of Civil Procedure, as a class action on behalf of themselves and the nationwide class of all persons (the "Class Members," the "alleged class" or the "Class") defined below against all Defendants:

> All persons, partnerships, and corporations who (1) participated and/or purchased bogus tax credits stemming from the Green Gas Arrangement, (2) claimed the bogus tax credits from the Green Gas Arrangement for tax years 2006 and 2007, and (3) were assessed back-taxes, penalties, and/or interest by the Internal Revenue Service as a result of such tax deductions. Excluded from the Class are: Defendants; anyone receiving referral fees for the plans; and the federal governmental entities.

105. Plaintiff believes that there are numerous Class Members geographically dispersed throughout the United States such that joinder is impracticable. These Class Members may be identified from information and records maintained by the Defendants and related third parties.

106. The Plaintiff and the Class Members each and all have tangible and legally protectable interests at stake in this action.

107. The claims of the Plaintiff and the Class Members have common origin and share a common basis. The claims of all Class Members originate from the same fraudulent transaction, the sale of bogus tax credits, predicated by the Defendants.

108. The Individual Plaintiff states a claim for which relief can be granted that is typical of claims on the Class Members as a whole. Thus, the class representative has been the victim of the same illegal activity as each member of the class.

109. If brought and prosecuted individually, each of the Class Members would necessarily by required to prove the instant claim upon the same material and substantive facts, upon the same remedial theories and would be seeking the same relief.

110. The claims and remedial theories pursued by the Plaintiff are sufficiently aligned with the interests of the Class Members to ensure that the universal claims of the alleged class will be prosecuted with diligence and care by the Plaintiff as representative of the Class.

111. There are questions of law and fact common to the alleged class. Such common questions include, *inter alia*:

    a.    Whether the FNS credits sold by Defendants under the Green Gas Arrangement for the tax year 2006 complied with each element of Section 45K;

    b.    Whether all the Defendants represented to Plaintiffs and to other potential Class Members that tax credits had actually been generated in compliance with Section 45K for the Green Gas Arrangement in the year 2006;

    c.    Whether all the Defendants represented to the Plaintiffs and to other potential Class Members that Section 45K tax credits sold by Defendants

under the Green Gas Arrangement could be properly claimed by Plaintiff and other class members;

d.   Whether the Defendants engaged in a pattern of racketeering activity in violation of RICO;

e.   Whether the Defendants' overt and/or predicate acts in furtherance of the conspiracy and/or aiding and abetting resulted in or proximately caused and causes injury to the Plaintiffs' and Class Members' business or property or irreparably harmed and harms the Plaintiffs and the alleged class and if so, the appropriate relief to which they are entitled;

f.   Whether Defendants' acts and practices constitute violations of applicable law for which Plaintiff and the Class Members are entitled to recover restitution or damages or for which disgorgement of ill-gotten monies is appropriate;

g.   Whether Defendants' actions constitute mail and wire fraud and;

h.   Whether Defendants have been unjustly enriched through the activities described herein.

112.   The facts are uniform for each Plaintiff and class members. The Chuhak Defendants with the assistance of Defendant Jones systematically assisted the Landfill Operators as follows:

a.   The FNS credits that Chuhak Defendants funneled to Plaintiffs in the Green Gas Arrangement originated on the tax returns of the Green Gas Trust that Defendant Stern had prepared. The credits themselves purportedly were generated in connection with landfill gas that Stern and the Landfill Operators claimed had been produced from at least 24 different landfills located throughout the United States.

b.   Green Gas Trust did not directly have any rights to the gas that was purportedly collected from these landfills. Instead, it entered into purported lease agreements with Resource Technology Corporation with respect to these gas rights. RTC, in turn, had originally obtained these gas rights as a result of various contracts it entered into with landfill owners. In an attempt to legitimize the credits, Green Gas Trust then entered into purported landfill gas sales agreements with RTC.

24

c.    The FNS credits sold to Plaintiff in the Green Gas Arrangement were
bogus for a number of different reasons. First, Green Gas Trust and RTC
did not have any legal rights to the landfill gases claimed at some of the
landfills. In fact, after RTC's rights to extract gas at certain of these
landfills were terminated, RTC's employees were prohibited from
entering the landfills. Second, many of the landfills did not have a gas
collection system in place, while others did not have the operational gas-
to-energy conversion facility. Third, many of the landfills did not have
sufficient landfill gas to sell for energy conversion (*i.e.*, the gas was not of
sufficient quality to be sold; in most instances the gas was, at most,
flared).

d.    Defendant Stern and the other Chuhak Defendants used the fact that
some converted gas was sold from a few landfills as a fig leaf in an
attempt to legitimize the entire scheme.

e.    Defendant Stern and the Chuhak Defendants with the assistance of
Defendants Jones organized and operated the Green Gas Arrangement.

f.    Defendant Stern controlled and operated most of the partnerships and
other entities that he used to funnel FNS credits to the participants in the
Green Gas Arrangement. For example, Stern managed at least 48
partnerships and companies, personally represented at least 17 entities,
was an officer of at least 12 entities, and was sole shareholder of at least
10 entities.

g.    At Stern's direction, Defendant Kerkstra with the assistance of Defendant
Jones drafted agreements that individual participants signed in order to
participate in the Green Gas Arrangement. Stern personally signed these
agreements on behalf of each partnership in his capacity as president of
the partnership's managing general partner.

h.    Stern purported to represent each of the hundreds of entities that he used
to implement the Green Gas Arrangement. At Stern's direction,
participants executed forms that purported to waive any conflict of
interest with respect to these transactions.

i.    Stern prepared (or directed others) in the preparation of over 170 federal
income tax returns that he used to funnel FNS credits to participants in
the Green Gas Arrangement. In addition, Stern signed over 80 federal
income tax returns that someone else at Chuhak & Tecson had prepared.

j.    The Chuhak Defendants prepared and sent correspondence and other documents to participants, including Schedules K-1 and explanatory cover letters, that identified that amount of the false FNS credits that he had allocated to them for use in a particular tax year.

k.    Stern was identified as a point of contact on many of the landfill gas sale agreements that purported to legitimize the manner in which he allocated FNS credits to participants. He also registered with the IRS at least 33 tax shelters in connection with the Green Gas Arrangement.

113.    Adjudications with respect to individual members of the Class would, as a practical matter, be dispositive of the interests of the other Class Members who are not parties to the action or could substantially impair or impede their ability to protect their interests.

114.    Defendants have acted or refused to act on grounds generally applicable to the Class, making appropriate final relief with respect to the Class as a whole. The prosecution of separate actions by individual members of the Class would create a risk of inconsistent or varying adjudications with respect to individual members of the alleged Class, which would establish incompatible standards of conduct for the party opposing the Class. Such incompatible standards, inconsistent or varying adjudications on what, of necessity, would be the same essential facts, proof and legal theories, would create and allow to exist inconsistent and incompatible rights within the Plaintiff Class. Further, the failure to permit this cause to proceed as a class action under Rule 23(b)(1)(A) would be contrary to the beneficial and salutary public policy of judicial economy in avoiding a multiplicity of similar actions. The Plaintiffs also allege that declaratory and injunctive relief is appropriate for the Class as a whole, making certification appropriate under Rule 23(b)(2). The Plaintiffs also allege that questions of law and fact applicable to the Class predominate over individual questions and that a class action is superior to other available methods for the fair and efficient adjudication of the controversy.

Therefore, certification is appropriate under Rule 23(b)(3). Failure to permit this action to proceed under Rule 23 would be contrary to the public policy encouraging the economies of attorney and litigant time and resources.

115.     The named Plaintiff alleges that it is willing and prepared to serve the Court and proposed Class in a representative capacity with all of the obligations and duties material thereto.

116.     The self-interests of the named Class representative is co-extensive with and not antagonistic to those of the absent Class Members. The proposed representatives will undertake to well and truly protect the interests of the absent Class Members.

117.     The named Plaintiff has engaged the services of counsel indicated below, Plaintiff's counsel are experienced in complex litigation and will adequately prosecute this action and will assert, protect and otherwise represent well the named Class representative and absent Class Members.

118.     A class action is superior to other available methods for the fair and efficient adjudication of this controversy since joinder of all members of the Class is impracticable. There will be no difficulty in the management of this action as a class action.

119.     The Plaintiff will fairly and adequately protect the interest of the Class and have no interests adverse to or which directly and irrevocably conflict with interest of other Class Members.

SECTION VII
DAMAGES

120.    As a consequence of Defendants' conduct and racketeering violations, Plaintiff and the other Class Members have sustained substantial losses and damage to their business and property in the form of substantial expenses incurred for professional fees, disallowed credits resulting in substantial tax liability, substantial expenses incurred in dealing with the Internal Revenue Service, incurred penalties and interest, and other damages. All members of the respective Class were affected in same manner by Defendants fraudulent and/or wrongful conduct.

### SECTION VIII
### FRAUDULENT CONCEALMENT AND EQUITABLE TOLLING

121.    Plaintiff and the other Class members had no knowledge of Defendants' unlawful scheme and could not have discovered Defendants' unlawful scheme and could not have discovered Defendants' unlawful conduct at an earlier date by the exercise of due diligence. As described above, Defendants affirmatively concealed their illegal acts and these acts only recently became known to the Plaintiff through the diligence of the United States Internal Revenue Service. As a result of Plaintiff's lack of knowledge of the effects of Defendants' unlawful scheme, Plaintiff asserts the tolling of any applicable statutes of limitation affecting the right of action by Plaintiff and other Class Members.

122.    Upon each and every instance that Defendants failed to disclose their illegal conduct, Defendants knew or should have known that the undisclosed information was material to those consumers who reasonably believed Defendants' conduct to be lawful and not fraudulent. Plaintiff relied on the acts and omissions of Defendants to their detriment.

Defendants knew or should have known that Plaintiff was relying Defendants during this time period. Defendants took gross advantage of the lack of knowledge of Plaintiff.

123.    Plaintiff has only learned of the injuries inflicted upon it by Defendants in the past six months.

124.    Defendants have committed numerous additional overt acts in furtherance of their conspiracy, both within and prior to four years from the date of the filing of this Complaint. Such overt acts include the illegal actions regarding the fraudulent scheme described herein.

125.    As the federal government has recognized, Stern and the Chuhak Defendants concealed, misrepresented, and hid, and caused to be concealed, misrepresented, and hidden, the existence of the corrupt endeavor, the purpose of the corrupt endeavor, and the acts done in furtherance of the corrupt endeavor.

126.    Stern, the Chuhak Defendants, and other Defendants controlled all aspects the Enterprise through the various entities and control over all documentation.

127.    Given Defendants' control over all aspects of the Enterprise and the corresponding documentation, Plaintiff could not know of the fraudulent activity.

128.    Plaintiff is not a tax expert and relied on its fiduciary relationships with the (i) Chuhak Defendants as its tax advisor, (ii) Methane Bio, LLC (the tax matters partner) and (iii) the Landfill Operators, as managing general partner(s) of the entities that formed the Green Gas Arrangement.

129.    The Chuhak Defendants gave repeated oral and written assurances that the tax credits were legitimate.

130. Defendants are still attempting to defend the bogus tax credits and continue to represent to Plaintiff and other participants that the United States Tax Court will uphold all tax credits in question.

131. Therefore, each instance in which Defendants engaged in the conduct complained of herein and each instance in which a Class member unknowingly relied upon representations and omissions constitutes part of a continuing violation and operates to toll any applicable statute of limitation. Furthermore, Defendants are estopped from relying on any statute of limitations defense because of their unfair and deceptive conduct.

SECION IX
ALLEGATIONS RELATING TO RICO

132. Plaintiff is a "person" within the meaning of 18 U.S.C. § 1964(c).

133. At all times relevant hereto, Plaintiff and Defendants were and are "persons" within the meaning of 18 U.S.C. § 1961(3).

A. Enterprise

134. An enterprise includes any individual, partnership, corporation, association, or other legal entity, and any union or group of individuals associated in fact although not a legal entity. 18 U.S.C. § 1961(4).

135. The Green Gas Arrangement is a RICO enterprise (the "Enterprise"). The Enterprise consists of: Green Gas Delaware Statutory Trust; Methane Bio LLC; Allen Gas GP; Bradshaw Gas GP; Jaguar Gas GP; Buon Giorno Gas GP; Craig GP; Australia Gas GP; Casper Gas GP; Jones Gas GP; Zoeller Gas GP; Irwin Gas GP; JMK Gas GP; 2006 Methane Gas GP; DJRJ Gas GP; 2005 Medinah Gas GP; Winged Foot Gas GP; Bloomington GP; Methane Green LLC;

Baltic Gas GP; Methane Blue LLC; Colt Gas GP; China Gas GP; Rocca Gas GP; DK Gas GP; BV Gas GP; Villapiano Gas GP; Pink Gas LLC; Werdna Gas GP; Red Gas LLC; Delaware Gas & Electric, Inc.; LaMonica Gas G.P.; Orange Gas; Davis Gas GP; Ciao Gas LP; Arrivederci Gas GP; San Bernardino Gas GP; Banco PanAmericano Inc., Scattered Corporation; Rumpelstiltskin USA Corporation; Giddyup, Inc., ROLJFLP, Inc.; and Archimedes Financial, LLC .

136.   The above entities were created and operated to facilitate the scheme of the Defendants. The layers of ownership interest were meant to obscure the true origin (or lack thereof) of the tax credit along with trying to confuse and discourage any investigation into the tax credits origin.

137.   In fact, after the IRS began to investigate the tax returns, Defendants hoped that they could simply bury the IRS investigator in paper work in the hope she would simply give up and not question the tax credits.

138.   All the Defendants used the Green Gas Arrangement as a RICO enterprise, and individually and through their agents represented to the Plaintiff and Class Members that the tax credits being sold through the Enterprise qualified for such treatment under Section 45K. In reality, the Defendants knew that the tax credits being sold did not qualify under I.R.C. Section 45K and therefore could not support the promised tax benefits. The Green Gas Arrangement was devised solely as a way hide and obfuscate the true nature the bogus tax credits and allow for sale to a large number of victims. This allowed Defendants to generate the largest amount of fees and commissions for themselves. The Defendants have made millions of dollars with this arrangement.

139.   The Defendants engaged in a common scheme, transaction, and course of conduct described herein in connection with the design, promotion and sale of the Green Gas Arrangement tax credits, pursuant to which they knowingly or recklessly engaged in acts, transactions, practices, and a course of business that operated as a fraud upon the Plaintiff and the Class.

140.   The purpose and effect of the Defendants' plan, transaction, and course of conduct was to generate huge fees and commissions by selling the bogus tax credits through the Green Gas Arrangement.

141.   Defendants maintain an interest in and control of the Enterprise and also conduct or participate in the conduct of the Enterprise's affairs through a pattern of racketeering activity.

142.   Defendants control and participation in the Enterprise are necessary for the successful operation of Defendants' scheme.

143.   The Enterprise has an ascertainable structure separate and apart from the pattern of racketeering activity in which the Defendants engaged.

B.   Operation of the RICO Enterprise

144.   Section 29/Section 45K caught the attention of unscrupulous tax attorneys, accounts, and others because tax credits under this section can reduce an individual's tax liability on a dollar-for-dollar basis.

145.   The appeal in selling the bogus tax credits is that their creation and validity can be easily masked, complete with voluminous paperwork and a specific tax code section referenced to create the illusion of validity.

146.    By creating a web of entities and sham agreements Defendants were able to obscure the true nature of the FNS credits and prevent even the most sophisticated consumer from identifying their true nature.

147.    The sole business of the Enterprise was to facilitate a fraudulent scheme of selling FNS credits.

148.    The Enterprise was only concerned with selling as many fraudulent tax credits as possible in order to maximize the profits for the Defendants.

149.    Furthermore, by controlling every aspect of the Enterprise and the information about the FNS credits, Defendants were able to give the appearance that the claimed FNS credits were legitimate.

150.    Each of these participants played an important role in the success of the Enterprise:

a.     Chuhak & Tecson P.C. and its agents – the Chuhak Defendants, led by Defendant Stern, created designed, and implemented the Green Gas Arrangement. Additionally, the Chuhak Defendants produced bogus tax returns, Schedule K-1s, and other documents supporting the legitimacy of the FNS credits. They also furnished these materials to the Landfill Operators to help in the sale and promotion of the Green Gas Arrangement and actually sold and promoted the Green Gas Arrangement themselves.

b.     Winthrop & Weinstine, P.A. and Jones – Winthrop & Weinstine P.A. through its agent Defendant Jones assisted in the creation and design of the legal entities that enabled the Green Gas Arrangement in collaboration with the Chuhak Defendants. Moreover, as outside

attorneys, their participation in the scheme helped lend it an air of legitimacy and helped sell the Green Gas Arrangement as a legitimate tax reduction scheme.

      c.    Landfill Operators – the Landfill Operators were instrumental in helping Defendant Stern and the Chuhak Defendants create and implement the Green Gas Arrangement. Greenblatt, Nichols, Jahelka, Sharp, May, Horrell and Werner were all board members and/or officers and owners of RTC where the FNS credits are alleged to have originated. Furthermore, they hired Stern and Chuhak to create the tax structures, which were used to funnel and obscure the true nature of the credits. Finally, they held themselves out as having knowledge and expertise in FNS tax credits. They used that alleged knowledge to help in the promotion and sale of the credits to Plaintiff and the Class.

      151.    There is no question that the Defendants intended to commit mail and wire fraud in connection with the promotion and operation of the Green Gas Arrangement because the Defendants knew that the FNS credits they were selling were not legitimate and could not be claimed as a tax credit. They could not be claimed as a tax credit because the gas was in most instances not converted to electricity or was nonexistent.

      152.    Unfortunately, the purchasers of the FNS credits (Plaintiff and the Class) have been deemed by the IRS to have underreported their income for the years in which the FNS credits were claimed, and have been assessed penalties and interest for said underpayment. Plaintiff and the Class continue to incur thousands of dollars in additional accounting and legal fees in connection with the IRS investigation into their tax returns.

C.    <u>Predicate Acts</u>

153.    With respect to the activities alleged herein, each Defendant and others not named as defendants in this Complaint agreed to the operation of the transaction or artifice to deprive Plaintiff and the Class of property interests. In furtherance of these agreements, each Defendant also agreed to interfere with, obstruct, delay or affect interstate commerce by attempting to obtain and/or actually obtaining property interests to which the Defendants are not entitled.

154.    With respect to the overt acts and activities alleged herein, each Defendant conspired with each other and with others not named as Defendants in this Complaint, to violate 18 U.S.C. § 1962(c), all in violation of 18 U.S.C. § 1962(d). Each Defendant also agreed and conspired with each other Defendant to participate, directly or indirectly, in interfering with, obstructing, delaying or affecting commerce by attempting to obtain and/or actually obtaining property interests to which the Defendants are not entitled.

155.    The numerous predicate acts of mail and wire fraud described herein are part of separate fraudulent transactions by Defendants designed to defraud the Plaintiff and the Class of money and property interests under false pretenses. As victims of these unlawful patterns of illegal activity, Plaintiffs have and continue to suffer losses as a result of these activities.

156.    In carrying out the overt acts and fraudulent transactions described above, the Defendants engaged in, *inter alia*, conduct in violation of federal law, including 18 U.S.C. §§ 1341 and 1343; and 18 U.S.C. § 1961 *et seq.*

157.    Section 1961(1) of RICO provides that "racketeering activity" means any act indictable under any of the following provisions of Title 18, United States Code: § 1341 (relating to mail fraud) and § 1343 (relating to wire fraud).

158.    Mail and wire fraud were a regular way in which the Enterprise conducted business. The Defendants routinely used both the United States Postal Service (and other couriers) along with email to communicate, exchange bogus documents, solicit business, file bogus tax returns, collect cash and otherwise perpetrate and further the scheme.

159.    The following table constitutes some of the known predicate acts of mail fraud and wire fraud of which Defendants engaged.

| DATE/TIME PERIOD | DOCUMENT TYPE | FALSITY | ACTION BY | STATUE VIOLATION |
|---|---|---|---|---|
| Exhibit 4 - March 1, 2006 | Letter and Email to Dave Kobza | Soliciting the sale of Section 45K tax credits; providing for a certain amount of credits for a certain contribution amount | Stern/Chuhak & Tecson | 18 U.S.C. §1341 & 18 U.S.C. §1343 |
| Exhibit 5 - April 4, 2006 | Check for $46,336 sent via US Mail | Alleged to be in exchange for FNS credits | Jim Howard (subpromoter working for Defendants in the sale of credits) | 18 U.S.C. §1341 & 18 U.S.C. §1343 |
| Exhibit 6 - April 4, 2006 | Check for $28,600 sent via FedEx | Alleged to be in exchange for FNS credits | Archimedes Financial LLC & Michael Horrell for Methane Bio | 18 U.S.C. §1341 & 18 U.S.C. §1343 |
| Exhibit 7 - April 11, 2006 | Letter Re: Schedule K-1 for Ciao Gas General Partnership | Stating that $35,049 worth of FNS credits could be claimed | Stern/Chuhak & Tecson | 18 U.S.C. §1341 |
| Exhibit 8 - April 11, 2006 | Letter Re: Schedule K-1 for Arrivederci Gas General Partnership | Stating that $40,222 worth of FNS credits could be claimed | Stern/Chuhak & Tecson | 18 U.S.C. §1341 |
| Exhibit 9 - April 15, 2006 | Letter Re: 2006 Schedule K-1 | Stating that $200,811.00 worth of FNS credits | Stern/Chuhak & Tecson | 18 U.S.C. §1341 |

| | for Baltic Gas General Partnership | could be claimed | | |
|---|---|---|---|---|
| Exhibit 10 - April 17, 2006 | Tax Return for Green Gas Delaware Statutory Trust | Filing false tax return | Stern/Chuhak & Tecson/Werner | 18 U.S.C. §1341; 26 USC §7206(1) |
| Exhibit 11 - September 7, 2006 | Submission of Ciao Gas GP Tax Return | Filing false tax return | Stern/Chuhak & Tecson /Werner | 18 U.S.C. §1341; 26 USC §7206(1) |
| Exhibit 12 - November 7, 2006 | Wire Transfer | Receiving $156,000 for tax credits | Archimedes Financial LLC & Michael Horrell | 18 U.S.C. §1343 |
| Exhibit 13 - March 30, 2007 | Letter Re: Schedule K-1 for Arrivederci Gas General Partnership | Stating a net-short term capital loss of $22,938 | Stern/Chuhak & Tecson | 18 U.S.C. §1341 |
| Exhibit 14 - March 30, 2007 | Letter Re: Schedule K-1 for Ciao Gas Limited Partnership | Stating a net-short term capital loss of $24,907 | Stern/Chuhak & Tecson | 18 U.S.C. §1341 |
| Exhibit 15 - March 30, 2007 | Letter Re: Green Gas Entities K-1 from Kerstra to Werner | Engaging in the filing of false tax documents | Kerkstra/Chuhak & Tecson/Werner | 26 USC §7206; 18 U.S.C. §1341 |
| Exhibit 16 - April 2, 2007 | Letter Re: Foreclosure of Interest in Davis Gas General Partnership | Preparing a false Schedule K-1 | Stern/Chuhak & Tecson | 18 U.S.C. §1341 |
| Exhibit 17 - April 5, 2005 | Letter Re: Green Gas K-1s From Dimitra | Preparing fraudulent K-1s through the mail | Anderson/ Chuhak & Tecson/Werner | 26 USC §7206; 18 U.S.C. §1341 |

| | Anderson to Kevin Werner | | | |
|---|---|---|---|---|
| Exhibit 18 - April 17, 2007 | Tax Return of Green Gas Delaware Statutory Trust | Engaging in the filing of false tax documents | Delaware Gas & Elec. Inc. /Stern/Chuhak & Tecson/Werner | 26 USC. §7206; 18 U.S.C. §1341 |
| Exhibit 19 - May 15, 2007 | Letter Re: Green Gas Entities 2006 Delaware Form 300 | Engaging in the filing of false tax documents | Markus; Chuhak & Tecson | 26 USC. §7206; 18 U.S.C. §1341 |
| Exhibit 20 - August 7, 2007 | Letter Re: Foreclosure of Interest in Baltic Gas GP | Providing a False K-1 Alleging Plaintiff can claim over $200k in tax credits | Stern/Chuhak & Tecson | 18 U.S.C. §1341 |
| Exhibit 21 - March 26, 2008 | Tax Return of Jaguar Gas General Partnership | Engaging in the filing of false tax documents | Kerkstra/Chuhak & Tecson/Werner/Delaware Gas & Electric Inc. | 26 USC. §7206; 18 U.S.C. §1341 |
| Exhibit 22 - June 30, 2008 | Tax Return of Pontiac Statutory Trust | Engaging in the filing of false tax documents | Stern/ Chuhak & Tecson/Werner/Archimedes | 26 USC. §7206; 18 U.S.C. §1341 |
| Exhibit 23 - June 30, 2008 | Tax Return of Green Gas Delaware Business Trust | Engaging in the filing of false tax returns | Stern/Chuhak & Tecson/Werner/Delaware Gas & Electric Inc. | 26 USC. §7206; 18 U.S.C. §1341 |

D.    Violations of 18 U.S.C. §§ 1341 and 1343.

160.    Plaintiff repeats and realleges each and every prior allegation of Paragraphs 1-133 as if fully set forth herein.

161.    For the purpose of executing and/or attempting to execute their transaction to defraud and to obtain money by means of false pretenses, representations or promises, the

Defendants, in violation of 18 U.S.C. § 1341, placed in post offices and/or in authorized repositories for mail matter and things to be sent or delivered by the United States Postal Service and received matter and things therefrom including but not limited to tax documents, contracts, instructions, correspondence, opinion letters, and others.

162. For the purpose of executing and/or attempting to execute their transaction to defraud and to obtain money by means of false, pretenses, representations or promises, the Defendants, in violation of 18 U.S.C. § 1343, transmitted and received by wire matter and things therefrom including but not limited to tax documents, contracts, instructions, correspondence, opinion letters, funds, and others.

163. In those matters and things sent or delivered by the United States Postal Service, by wire and through other interstate electronic media, Defendants falsely and fraudulently misrepresented and fraudulently suppressed material facts from Plaintiff and the Class as described above, in violation of 18 U.S.C. §§ 1341 and 1343, including but not limited to the following:

   a.   That the FNS credits being sold through the Green Gas Arrangement had been generated in a manner compliant with Section 45K of the Tax Code;

   b.   That the Green Gas Arrangement complied with all federal tax laws and regulations and;

   c.   That the Green Gas Arrangement was a legitimate way to reduce tax liability;

164. The predicate acts of mail and wire fraud began when Defendants collected funds in exchange for FNS credits made available to their victims and continued unabated

thereafter. The Defendants and the other wrongdoers, on their own and as part of a common conspiracy, defrauded Plaintiff and the Class as set out above.

166.   The Defendants intentionally and knowingly made material misrepresentations and intentionally and knowingly suppressed material facts from Plaintiff and the Class, for the purpose of deceiving them and thereby obtaining financial gain. The Defendants either knew or recklessly disregarded that the misrepresentations and omissions described above were material. Plaintiff and the Class were injured as a result of the misrepresentations and omissions in carrying out the transactions and subsequently filing tax returns using the treatment reflected on the bogus tax returns.

166.   The Defendants made continual use of mail and wire transmissions to effectuate their fraudulent scheme. Additionally, the Defendants transmitted numerous specific fraudulent statements to Plaintiff and the Class through the mail or by email or fax.

167.   The Defendants intentionally and knowingly made theses material misrepresentations and intentionally and knowingly suppressed material facts from Plaintiff and the Class for the purpose of deceiving them and thereby obtaining financial gain. The Defendants either knew or recklessly disregarded that the misrepresentations and omissions described above were material. Plaintiff and the Class were injured as a result of the misrepresentations and omissions in carrying out the transactions and subsequently filing tax returns using the treatment opined.

168.   As set forth above, there are numerous specific examples of the predicate acts of mail and wire fraud committed by Defendants pursuant to their transaction to defraud Plaintiffs.

169. Plaintiffs have therefore been injured in their business or property as a result of the Defendants' overt acts and racketeering activities.

E.     Pattern of Racketeering Activity

170. Plaintiff repeats and realleges each and every prior allegation in Paragraphs 1-133 as if fully set forth herein.

171. As set forth above, the Defendants have engaged in a "pattern of racketeering activity," as defined in § 1961(5) of RICO, by committing and/or conspiring to accomplish at least two such acts of racketeering activity, as described above, within the past ten years. Each such act of racketeering activity was related, had similar purposes, involved the same or similar participants and methods of commission, and had similar results impacting upon similar victims, including Plaintiff and the Class.

172. The multiple acts of racketeering activity committed and/or conspired to by Defendants, as described above, were related to each other and amount to and pose a threat of continued racketeering activity, and, therefore, constitute a "pattern of racketeering activity," as defined by 18 U.S.C. § 1961(5)

173. Plaintiff and the Class therefore have been injured in their business or property as a result of Defendants' overt and racketeering activities as described above and throughout this Complaint.

SECTION X
CLAIM 1 – VIOLATIONS OF RICO 18 U.S.C. § 1962(c)
AGAINST ALL DEFENDANTS

174. Plaintiff repeats and realleges each and every prior allegation in Paragraphs 1 -173 as if fully set forth herein.

41

175.     Section 1962(c) of RICO provides that it "shall be unlawful for any person employed by or associated with any enterprise engaged in, or the activities of which affect, interstate or foreign commerce, to conduct or participate, directly or indirectly, in the conduct of such enterprise's affairs through a pattern of racketeering activity or collection of unlawful debt."

176.     Plaintiff incorporates, as though fully set out herein, its allegations regarding the Enterprise.

177.     Plaintiff incorporates, as if fully set forth herein, its allegations that Defendants have engaged in a pattern of racketeering activity.

178.     The Defendants, who are associated with and are part of the Enterprise, conduct the Enterprise's affairs through a pattern of racketeering activity, as set forth in this Complaint. Through the fraudulent and wrongful conduct described in this Complaint, Defendants seek to deprive Plaintiff and the Class of money and property rights. In order to successfully execute their scheme in the manner set forth in this Complaint, Defendants must have a system that allows Defendants to access their victims in a manner to effectuate the fraudulent transactions. The Enterprise allows the Defendants this access.

179.     With respect to the activities alleged herein, the Defendants have acted at all times with malice toward Plaintiffs and the Class in their efforts to acquire and maintain an interest in an Enterprise that affects interstate commerce.

180.     In carrying out the overt acts and fraudulent scheme described above, the Defendants have engaged in conduct in violation of federal laws, including *inter alia* 18 U.S.C. §§ 1341 and 1342 and 18 U.S.C. § 1961, *et seq.* as set forth more fully above.

181. Therefore, Defendants have each engaged in racketeering activity which is defined in § 1961(1) of RICO to mean "any act which is indictable under any of the following provisions of Title 18, United States Code § 1341 (relating to mail fraud) and § 1343 (relating to wire fraud)...." 18 U.S.C. § 1961 (West 2014).

182. As a proximate result of Defendants' unlawful pattern of illegal fraudulent conduct as described above, Plaintiffs and the Class have been injured in their business or property as described above.

## CLAIM 2 – VIOLATIONS OF RICO 18 U.S.C. 1962(d) BY CONSPIRING TO VIOLATE 18 U.S.C. 1962(c) AGAINST ALL DEFENDANTS

183. Plaintiff repeats and realleges each and every prior allegation in Paragraphs 1 - 173 as if fully set forth herein.

184. This claim for relief arises under 18 U.S.C. § 1964(a) of RICO and seeks relief from the Defendants' activities described herein for violations of 18 U.S.C. § 1962(d) for their conspiring to violate 18 U.S.C. § 1962(c).

185. Section 1962(d) provides that it "shall be unlawful for any person to conspire to violate any of the provisions of subsection (a) or (c) of this section."

186. Plaintiff incorporates, as though fully set out herein, its allegations regarding the Enterprise.

187. Plaintiff incorporates, as if fully set forth herein, its allegations that Defendants have engaged in a pattern of racketeering activity.

188. Absent Defendants' conspiracy and joint efforts, Defendants' scheme would not be successful. Acting jointly, Defendants have and have had greater power, have been able to

exert greater influence, have been able to successfully engage in the activities set forth herein, and have had greater ability to conceal their activities.

189. Defendants have also violated § 1962(d) by conspiring to violate 18 U.S.C. § 1962(c). The object of this conspiracy has been to conduct or participate in, directly or indirectly, the conduct of the affairs of the § 1962(c) Enterprise(s) described previously through a pattern of racketeering activity.

190. Defendants, their employees, and multiple agents have been joined in the conspiracies to violate 18 U.S.C. § 1962(c) in violation of § 1962(d) by various third parties not named as Defendants herein, such as many of the promoters and sub-promoters of the Green Gas Arrangement.

191. As demonstrated in detail above, the Defendants have engaged in numerous overt and predicate fraudulent racketeering acts in furtherance of the conspiracy including systemic fraudulent practices designed to defraud Plaintiff and the Class of money and other property interests.

192. The nature of the above described acts, material misrepresentations, and omissions in furtherance of the conspiracy give rise to an inference that they not only agreed to objective of an 18 U.S.C. § 1962(d) violation of RICO by conspiring to violate 18 U.S.C. § 1962(c), but they were aware that their ongoing fraudulent acts have been and are part of an overall pattern of racketeering activity.

193. As a direct and proximate result of the Defendants' overt acts and predicate acts in furtherance of violating 18 U.S.C § 1962(d) by conspiring to violate 18 U.S.C. § 1962(c),

Plaintiff and the Class have been and are continuing to be injured in their business or property as set forth more fully above.

194.    The Defendants have sought to and have engaged in the commission of overt acts and the following described unlawful racketeering predicate acts that have generated income or proceeds received by Defendants from such pattern of racketeering activity, including:

a.    Multiple instances of mail and wire fraud in violations of 18 U.S.C. §§ 1341 and 1343 and;

b.    Multiple instances of travel in interstate commerce to attempt to and to actually commit mail fraud and wire fraud, including the predicate acts described in particularity in Paragraph 168 of this Complaint.

195.    As a proximate result of Defendants' conduct as described above, Plaintiff and the Class have been injured in their business or property as described above.

### CLAIM 3 – BREACH OF FIDUCIARY DUTY
### AGAINST CHUHAK DEFENDANTS
### (GARY J. STERN, DAVID SHINER, JEANNE KERKSTRA, DONALD RUSS, AND EDWIN JOSEPHSON)

196.    Plaintiff repeats and realleges each and every prior allegation in Paragraph 1 - 173 as if fully set forth herein.

197.    The Chuhak Defendants represented and advised Plaintiff and other potential Class Members regarding their purchase of the FNS credits.

198.    As such, the Chuhak Defendants owed a fiduciary duty to Plaintiff and other potential Class Members.

199. The Chuhak Defendants breached their fiduciary duty to the Plaintiff and to other Class Members by:

    a. Failing to advise Plaintiff and other potential Class Members of the true tax implications of their purchase;

    b. Failing to provide Plaintiff and other potential Class Members complete and accurate information known to Chuhak regarding the structure of Plaintiff's and other potential Class Members' purchase to give them the opportunity to make an informed decision as to whether they should purchase;

    c. Failing to advise Plaintiff and other potential Class Members that purchasing the FNS credits would potentially subject Plaintiff and other potential class members to taxes, penalties and unnecessary costs;

    d. Failing to advise Plaintiff and other potential Class Members that FNS credits did not qualify as Section 45K status because of the manner in which they were created;

    e. Failing to disclose and explain to Plaintiff and to other potential Class Members the implications of Chuhak's common representation of multiple clients; and

    f. Failing to advise Plaintiff and other potential Class Members of their right to be independently represented.

200. As a direct and proximate result of one or more of the aforementioned breaches, the Plaintiff and other potential Class Members have suffered damages including but not limited to loss of property, unnecessary tax liability, and unnecessary professional fees.

## CLAIM 4 – BREACH OF FIDUCIARY DUTY
## LANDFILL OPERATORS & METHANE BIO LLC

201. Plaintiff and other potential Class Members incorporate and re-allege Paragraphs 1 - 173 as if fully stated herein.

202. At all times relevant, the Landfill Operators owned and/or helped controlled the Green Gas Arrangement and had intimate knowledge of its structure, function, production and dealings.

203. The Landfill Operators owed a duty of care and loyalty to Plaintiff and to other potential class members by virtue of their position of ownership and control of the Green Gas Arrangement as managing general partners of the entities.

204. This duty included structuring the Green Gas Arrangement in such a way as to allow Plaintiff and other class members to claim the FNS credits as part of a legitimate business transaction.

205. At all relevant times Methane Bio LLC was the Tax Matters Partner for the Green Gas Delaware Statutory Trust, and had a duty to Plaintiff and other class members regarding the FNS credits held by the Trust before the United States Tax Court.

206. The Landfill Operators and Methane Bio LLC breached their duties in one or more of the following ways:

    a. Failing to ensure that the FNS tax credits generated by the Green Gas Arrangement conformed with applicable Internal Revenue Code provisions;

    b. Failing to structure the Green Gas Arrangement in such a way as to ensure Plaintiff and other class members could legally claim the FNS credits;

    c. Failing ensure, compile, and maintain documentation supporting the claimed FNS tax credits;

    d. Failing to notify Plaintiff and other class members that the Green Gas Arrangement was under investigation by the Internal Revenue Service and did not comply with the applicable tax law;

207.    As a direct and proximate result of the one or more of the aforementioned acts, Plaintiffs and other potential class members suffered damages including, but not limited to, the loss of property, unnecessary tax liability, and unnecessary professional fees.

### CLAIM 5 – AIDING AND ABETTING BREACH OF FIDUCIARY DUTY AGAINST THE CHUHAK DEFENDANTS AND DEFENDANT JONES

208.    Plaintiff and other potential Class Members incorporate and re-allege Paragraphs 1 - 173 as if fully stated herein.

209.    At all times relevant, the Landfill Operators owned and/or helped controlled the Green Gas Arrangement and had intimate knowledge of its structure, function, production and dealings.

210.    The Landfill Operators owed a duty of care and loyalty to Plaintiff and to other potential class members by virtue of their position of ownership and operation of the Green Gas Arrangement.

211.    The Landfill Operators breached their duty by falsely representing to Plaintiff and to other potential class members that purchasing FNS credits through the Green Gas Arrangement would result in Plaintiffs and other potential class members receiving tax credits that equaled or exceeded their cash payment. Plaintiffs and other potential class members did not learn of any injury as a result of Defendants' conduct until the year 2014.

212.    The Landfill Operators knew or should have known that Plaintiffs' and other potential class members' could not claim Section 45K tax credits due to the manner in which the Landfill Operators managed and operated the Green Gas Arrangement.

213.    The aforementioned breaches proximately caused damage to the Plaintiff and to other potential Class Members including, but not limited to, the loss of purchase money, unnecessary tax liability, and unnecessary professional fees.

214.    The Chuhak Defendants and Defendant Jones were intimately involved in the creation of the Green Gas Arrangement and worked closely with the Landfill Operators to market the FNS credits.

215.    At all relevant times, the Chuhak Defendants and Defendant Jones were aware that the Green Gas Arrangement was not operating in accordance with the requirements of Section 45K of the Tax Code.

216.    Despite this, both continued to provide legal services to the Landfill Operators to structure and market the Green Gas Arrangement.

217.    The Chuhak Defendants and Defendant Jones assisted in soliciting purchasers for the Green Gas Arrangement.

218.    The Chuhak Defendants and Defendant Jones solicited Plaintiff and other potential class members without disclosing information that the FNS credits would not meet all of the statutory requirements and therefore would be disallowed. The Chuhak Defendants and Defendant Jones failed to advise Plaintiff and other potential class members that they would receive no tax benefit.

219.    The Chuhak Defendants and Defendant Jones materially assisted the Landfill Operators by creating the Green Gas Arrangement and by soliciting Plaintiffs and other potential class members.

220.     As a direct and proximate result of one or more of the aforementioned acts, Plaintiffs and other potential class members suffered damages including, but not limited to, the loss of property, unnecessary tax liability, and unnecessary professional fees.

CLAIM 6 – FRAUD
AGAINST ALL DEFENDANTS

221.     Plaintiffs and other potential class members incorporate and re-allege Paragraphs 1 - 173 as if fully stated herein.

222.     At all times relevant, the Defendants knew the Green Gas Arrangement was seriously flawed and would not qualify for FNS tax credits under Section 45K.

223.     Despite this, Defendants advised Plaintiffs and other potential class members that the FNS credits being sold would qualify all individuals for tax credits under Section 45K.

224.     Defendants knew this statement was false and that their representation that purchase of the FNS credits would allow Plaintiff to legally claim tax credits was also false.

225.     Defendants did not advise Plaintiff or other potential class members that their purchase would not meet the statutory requirements and that little or no tax benefit would be realized.

226.     Defendants made the aforementioned statements about the FNS credits to induce Plaintiff and other potential class members to purchase.

227.     Plaintiff and other potential class members relied upon Defendants' false statements when they made the decision to purchase the FNS credits.

228.     Plaintiffs and other potential class members were injured by their reliance on Defendants' false statements.

220.     As a direct and proximate result of one or more of the aforementioned acts, Plaintiffs and other potential class members suffered damages including, but not limited to, the loss of property, unnecessary tax liability, and unnecessary professional fees.

## CLAIM 6 – FRAUD
## AGAINST ALL DEFENDANTS

221.     Plaintiffs and other potential class members incorporate and re-allege Paragraphs 1 - 173 as if fully stated herein.

222.     At all times relevant, the Defendants knew the Green Gas Arrangement was seriously flawed and would not qualify for FNS tax credits under Section 45K.

223.     Despite this, Defendants advised Plaintiffs and other potential class members that the FNS credits being sold would qualify all individuals for tax credits under Section 45K.

224.     Defendants knew this statement was false and that their representation that purchase of the FNS credits would allow Plaintiff to legally claim tax credits was also false.

225.     Defendants did not advise Plaintiff or other potential class members that their purchase would not meet the statutory requirements and that little or no tax benefit would be realized.

226.     Defendants made the aforementioned statements about the FNS credits to induce Plaintiff and other potential class members to purchase.

227.     Plaintiff and other potential class members relied upon Defendants' false statements when they made the decision to purchase the FNS credits.

228.     Plaintiffs and other potential class members were injured by their reliance on Defendants' false statements.

229. The aforementioned false statements caused Plaintiffs and other potential Class Members damage including, but not limited to, the loss of property, unnecessary tax liability, and unnecessary professional fees.

## CLAIM 7 – AIDING AND ABETTING FRAUD
## THE CHUHAK DEFENDANTS AND DEFENDANT JONES

230. Plaintiffs and other potential Class Members incorporate and re-allege Paragraphs 1 - 173 as if fully stated herein.

231. At all times relevant, the Landfill Owners knew that the Green Gas Arrangement would not generate Section 45K tax credits.

232. Despite this, the Landfill Owners conveyed to the Plaintiff and other potential Class Members the FNS credits purchased would reduce their taxable income by either the same amount as the purchase price or more.

233. These and the aforementioned statements were false.

234. The Landfill Owners knew that they were false and made them only to induce Plaintiff and other potential Class Members to act.

235. Plaintiff and other potential Class Members purchased based on these false statements by the Landfill Owners.

236. Plaintiff and other potential Class Members were injured as a result of their reliance on the Landfill Operators' false statements.

237. The Chuhak Defendants and Defendant Jones had intimate knowledge of the Green Gas Arrangement.

238.     The Chuhak Defendants and Defendant Jones assisted the Landfill Operators in setting up the Green Gas Arrangement.

239.     The Chuhak Defendants and Defendant Jones assisted the Landfill Operators in soliciting purchasers, including Plaintiff and other potential class members.

240.     The Chuhak Defendants and Defendant Jones never disclosed that the Landfill Operators conveyed false information in order to induce Plaintiff and other potential Class Members to act.

241.     The Chuhak Defendants and Defendant Jones allowed Plaintiff to purchase worthless FNS tax credits under false pretenses.

242.     As a result of the aforementioned acts by the Chuhak Defendants and Defendant Jones, Plaintiffs and other potential class members suffered damages including, but not limited to, the loss of property, unnecessary tax liability, and unnecessary professional fees.

## CLAIM 8 – CIVIL CONSPIRACY
## AGAINST ALL DEFENDANTS

243.     Plaintiffs and other potential Class Members incorporate and re-allege Paragraphs 1- 173 as if fully stated herein.

244.     By way of the Landfill Operators close relationship with the Chuhak Defendants and Defendant Jones, they (along with the assistance of the other named Defendants) were able to work in concert to sell bogus FNS credits.

245.     The Landfill Operators and the Chuhak Defendants worked together to set up the Green Gas Arrangement. It is already known that the Chuhak Defendants and Defendant Jones drafted many of the fraudulent documents at issue in this case.

246.     All Defendants then engaged in a nationwide solicitation effort to sell the bogus FNS credits that were being funneled through the Green Gas Arrangement.

247.     At all times, all Defendants knew that the FNS credits being sold were not in compliance with the applicable tax code section and would not produce the intended benefit to the purchasers.

248.     The Chuhak Defendants and the Landfill Operators with the assistance of Defendant Jones acted in furtherance of their agreement to sell bogus FNS credits by taking the following acts:

    a.     Designing, forming, and implementing the Green Gas Arrangement as an entity by which they could perpetrate their illegal tax scheme resulting in profit to the Defendants at the expense of Plaintiff and other Class Members;

    b.     Representing that the Green Gas Arrangement was set up for a legitimate purpose;

    c.     Providing advice that the purchase of FNS credits from the Green Gas Arrangement would result in Plaintiff and the Class Members being able to claim those credits on their respective tax returns;

    d.     Failing to disclose the illegal nature of their tax scheme;

    e.     Participating in the preparation and filing of the false and fraudulent income tax returns in connection with the Green Gas Arrangement and;

    f.     Submitting false and misleading information to the Internal Revenue Service in connection to its inquiries into the tax credits being claimed by the Plaintiff and other Class Members.

249.     The above acts were in concert and in furtherance of the illegal scheme to sell bogus FNS credits.

250.    The conspiracy among the Defendants resulted in damage to the Plaintiff and other class members including, but not limited to, the loss of property, unnecessary tax liability, and unnecessary professional fees.

### JURY DEMAND

Plaintiff hereby demands a trial by jury in this action.

### PRAYER FOR RELIEF

WHEREFORE, Plaintiff, on behalf of themselves and the other Class Members, respectfully pray:

a.    This Honorable Court determine that this action may be maintained as a class action pursuant to Rule 23 of the Federal Rules of Civil Procedure, and direct that reasonable notice of this action be given to the Class;

b.    The acts alleged herein be adjudged and decreed to be unlawful in violation of the federal and state claims asserted herein;

c.    The Class recover three-fold the damages determined to have been sustained by them pursuant to 18 U.S.C. § 1964(c) and state law, and that joint and several judgments be entered against Defendants in favor of the Class;

d.    The Class recover the costs and expenses of suit; pre- and post- judgment interest, and reasonable attorney fees as provided by law;

e.    Compensatory damages in an amount to be ascertained at trial and/or rescission;

f.    Punitive or exemplary damages in an amount to be ascertained at trial;

g.    Additional damages pursuant to applicable state or federal law;

h.    Reasonable attorneys' fees and costs and;

54

i.     Disgorgement of fees paid to all Defendants;

j.     All other relief, in law or in equity, to which Plaintiff and the Class Members

may be entitled.

Respectfully submitted,

_____

Attorney for the Plaintiff

Daniel F. Konicek (6205408)
Amir R. Tahmassebi (6287787)
Andrew J. Candela (6312477)
KONICEK & DILLON, P.C.
21 W. State St.
Geneva, IL 60134
630.262.9655